IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COMPLETE GENOMICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-970-MN |
| | ) | |
| ILLUMINA, INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | | |
| ILLUMINA, INC. and | ) | |
| ILLUMINA CAMBRIDGE LTD., | ) | |
| | ) | |
| Counterclaim-Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMPLETE GENOMICS, INC., | ) | |
| BGI AMERICAS CORP., and | ) | |
| MGI AMERICAS INC. | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |
| | ) | |

## ANSWER AND COUNTERCLAIM

Defendant Illumina, Inc. ("Illumina") hereby provides its Answer to the First Amended
Complaint of Complete Genomics, Inc. ("Complete Genomics"), and Counterclaim-Plaintiffs
Illumina and Illumina Cambridge Ltd. ("Illumina Cambridge") (collectively, "Counterclaim-
Plaintiffs") hereby provide their Counterclaim as against Complete Genomics, BGI Americas
Corp. ("BGI Americas"), and MGI Americas Inc. ("MGI Americas") (collectively,
"Counterclaim-Defendants") as set forth below. Unless specifically admitted, Illumina denies
each and every allegation made in the First Amended Complaint and states as follows:

## RESPONSE TO ALLEGATIONS CONCERNING THE PARTIES

1.     Illumina admits, on information and belief, that Complete Genomics is a privately-held research company, but denies that its principal place of business is at 2904 Orchard Way, San Jose, California 95134.  On information and belief, Complete Genomics has its principal place of business at 2904 Orchard Parkway, San Jose, California 95134.

2.     Illumina lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 of the First Amended Complaint and therefore denies those allegations.

3.     Illumina admits that it is a Delaware corporation with its principal place of business at 5200 Illumina Way, San Diego, California 92122.

## RESPONSE TO ALLEGATIONS CONCERNING JURISDICTION AND VENUE

4.     Illumina admits that it is subject to personal jurisdiction because it is incorporated in the State of Delaware.  Except as so admitted, denied.

5.     Illumina admits that the First Amended Complaint purports to state an action arising under the patent laws of the United States of America, 35 U.S.C. § 1, et seq.  Illumina admits that the Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because this is a civil action arising under the patent laws of the United States.  Except as so admitted, denied.

6.     Illumina admits that venue is proper in this District under 28 U.S.C. § 1400(b) because it is incorporated in the State of Delaware and therefore resides within this district.  Except as so admitted, denied.

## RESPONSE TO ALLEGATIONS CONCERNING THE '132 PATENT

7.     Illumina admits, on information and belief, on December 29, 2015, the United States Patent and Trademark Office issued U.S. Patent No. 9,222,132 ("hereinafter the '132 patent"), titled "Methods and Compositions for Efficient Base Calling in Sequencing Reactions." Illumina admits the named inventor listed on the '132 patent is Radoje Drmanac.  Illumina admits the '132 patent is attached to the First Amended Complaint as Ex. A (U.S. Patent No. 9,222,132). Except as so admitted, denied.

8.     Illumina lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the First Amended Complaint and therefore denies those allegations.

## RESPONSE TO ALLEGATIONS CONCERNING

## INFRINGEMENT OF THE '132 PATENT

### A.   Direct Infringement of the '132 Patent

9.     Illumina admits it has described certain of its products as utilizing "2-channel" technology.  Except as so admitted, denied.

10.     Illumina admits it sells "Library Preparation Kits" and "Cluster Generation and Sequencing Kits."  Except as so admitted, denied.

11.     Denied.

### 1.   Illumina's "Two-Channel" Sequencing Systems

12.     Illumina admits it has described the NovaSeq 6000 system, the NextSeq 500/550 Series systems, and the MiniSeq system as including "2-channel" technology.  Except as so admitted, denied.

### 2.   Illumina's "Library Preparation Kits"

13.     Illumina admits it uses and sells "Library Preparation Kits" that are compatible with one or more of the NovaSeq 6000, NextSeq Series, and MiniSeq systems. Except as so admitted, denied.

14.     Illumina admits according to its website that the following Library Preparation Kits are compatible with the NovaSeq 6000 system: Nextera DNA Exome, Nextera DNA Flex Library Prep Kit, Nextera Flex for Enrichment, TruSeq DNA Exome, TruSeq DNA Nano, and TruSeq DNA PCR-Free (hereinafter "NovaSeq DNA Prep Kits"). Except as so admitted, denied.

15.     Illumina admits according to its website that the following Library Preparation Kits are compatible with the NovaSeq 6000: TruSeq RNA Exome, TruSeq Stranded Total RNA, TruSeq Stranded Total RNA with Ribo-Zero Globin, TruSeq Stranded Total RNA with Ribo-Zero Plant, [and] TruSeq Stranded mRNA (hereinafter "NovaSeq RNA Prep Kits"). Except as so admitted, denied.

16.     Illumina admits according to its website that the following Library Preparation Kits are compatible with the NextSeq 500/550 Series systems: AmpliSeq for Illumina On-Demand, Nextera DNA Exome, Nextera Rapid Capture Custom Enrichment Kit, Nextera XT DNA Library Preparation Kit, TruSeq Custom Amplicon Low Input Kit, TruSeq Custom Amplicon v1.5, TruSeq DNA Exome, TruSeq DNA Nano, TruSeq DNA PCR-Free, TruSeq Methyl Capture EPIC Library Prep Kit, and TruSight Oncology 500 (hereinafter "NextSeq DNA Prep Kits"). Except as so admitted, denied.

17.     Illumina admits according to its website that the following Library Preparation Kits are compatible with the NextSeq 500/550 Series systems: AmpliSeq for Illumina Custom RNA Panel, TruSeq RNA Exome, TruSeq RNA Library Prep Kit v2, TruSeq Stranded

Total RNA, TruSeq Stranded Total RNA with RiboZero Globin, TruSeq Stranded Total RNA with Ribo-Zero Plant, TruSeq Stranded mRNA, TruSeq Targeted RNA Expression Library Prep Kits, and TruSight RNA Fusion Panel.  Except as so admitted, denied.

18.    Illumina admits according to its website that the following Library Preparation Kits are compatible with the MiniSeq system: AmpliSeq for Illumina BRCA Panel, AmpliSeq for Illumina Cancer Hotspot Panel v2, AmpliSeq for Illumina Childhood Cancer Panel, AmpliSeq for Illumina Custom DNA Panel, AmpliSeq for Illumina Focus Panel, AmpliSeq for Illumina Library Prep Indexes and Accessories, AmpliSeq for Illumina Myeloid Panel, AmpliSeq for Illumina TCR beta-SR Panel, Nextera DNA Flex Library Prep Kit, Nextera Flex for Enrichment, Nextera XT DNA Library Preparation Kit, TruSeq Custom Amplicon Low Input Kit, TruSeq Custom Amplicon v1.5, TruSeq DNA Nano, and TruSeq DNA PCR-Free (hereinafter "MiniSeq DNA Prep Kits").  Except as so admitted, denied.

19.    Illumina admits according to its website that the following Library Preparation Kits are compatible with the MiniSeq: AmpliSeq for Illumina Custom RNA Fusion Panel, AmpliSeq for Illumina Custom RNA Panel, AmpliSeq for Illumina Focus Panel, AmpliSeq for Illumina Immune Repertoire Plus, TCR beta Panel, AmpliSeq for Illumina Immune Response Panel, AmpliSeq for Illumina Library Prep Indexes and Accessories, AmpliSeq for Illumina Myeloid Panel, AmpliSeq for Illumina TCR beta-SR Panel, TruSeq Small RNA Library Preparation Kits, TruSeq Targeted RNA Expression Library Prep Kits, and TruSight RNA Fusion Panel (hereinafter "MiniSeq RNA Prep Kits").  Except as so admitted, denied.

### 3.  Illumina's Cluster Generation and Sequencing Kits

20.    Illumina admits it uses and sells "Cluster Generation and Sequencing Kits" that are compatible with the NovaSeq 6000, NextSeq Series, and MiniSeq systems.  Except as so

admitted, denied.

21.     Illumina admits according to its website the following Cluster Generation and Sequencing Kits are compatible with the NovaSeq 6000 system: the NovaSeq Reagent Kits (including SP Reagent Kits, S1 Reagent Kits, S2 Reagent Kits, and S4 Reagent Kits), the NovaSeq Xp Workflow, and the PhiX Control v3 (hereinafter the "NovaSeq Sequencing Kits").  Except as so admitted, denied.

22.     Illumina admits according to its website the following Cluster Generation and Sequencing Kits are compatible with the NextSeq 500 Series systems: the NextSeq 500/550 TG Kits (including v1.2, v2, and v2.1), the NextSeq 500/500 v2.5 Kits, and the PhiX control v3 (hereinafter "NextSeq Reagent Kits").  Except as so admitted, denied.

23.     Illumina admits according to its website the following Cluster Generation and Sequencing Kits are compatible with the MiniSeq system: the MiniSeq Reagent Kit and the PhiX Control v3 (hereinafter "MiniSeq Reagent Kits").  Except as so admitted, denied.

### 4.  Infringement Analysis for Claims 1-4 of the '132 Patent

24.     Denied.

25.     Illumina admits paragraphs 31 to 85 of the First Amended Complaint purport to allege direct infringement of claims 1-4 by Illumina's and its customers' use of the NovaSeq 6000 in combination with its "TruSeq$^{TM}$ DNA PCR-Free" or "TruSeq$^{TM}$ DNA Nano" library preparation kits and the NovaSeq 6000 Reagent Kits, but it denies each and every one of those allegations.  Except as so admitted, denied.

26. Illumina admits that it markets the "TruSeqTM DNA PCR-Free" and "TruSeqTM DNA Nano" for use with the NextSeq Series and MiniSeq systems.  Except as so admitted, denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

**a.   Infringement of Claim 1 of the '132 Patent**

31.     Illumina admits paragraph 31 purports to recite the language of Claim 1 of the '132 patent.  Except as so admitted, denied.

> **i.   "A method for determining identities of nucleotides at detection positions of a plurality of different nucleic acid templates by performing sequencing-by-extension reactions, the method comprising:"**

32.     Denied.

33.     Illumina admits the language quoted in paragraph 33 appears in Exhibits B and L attached to the First Amended Complaint.  Except as so admitted, denied.

> **ii.   "(a) providing an array comprising single-stranded nucleic acid templates disposed at positions on a surface"**

34.     Illumina admits that the NovaSeq 600 system utilizes a flow cell.  Except as so admitted, denied.

35.     Illumina admits the language quoted in paragraph 35 appears in Exhibit M attached to the First Amended Complaint.  Except as so admitted, denied.

36.     Illumina admits the image in paragraph 36 appears in Exhibit O attached to the First Amended Complaint.  Except as so admitted, denied.

37.     Illumina admits that the Exhibit O attached to the First Amended Complaint purports to describe aspects of the cluster generation process that may be employed in the NovaSeq System.  Except as so admitted, denied.

38. Illumina admits that the Exhibit O attached to the First Amended Complaint purports to describe aspects of the cluster generation process that may be employed in the NovaSeq System. Except as so admitted, denied.

39. Illumina admits that the Exhibit O attached to the First Amended Complaint purports to describe aspects of the cluster generation process that may be employed in the NovaSeq System. Except as so admitted, denied.

40. Paragraph 40 states a legal conclusion to which no response is required, and Illumina denies any allegations therein.

### iii. "(b) for each of a plurality of said single-stranded nucleic acid templates, determining the identity of nucleotides at detection positions in the nucleic acid template in multiple cycles of a sequencing-by-extension reaction, comprising:"

41. Illumina admits the language quoted in paragraph 41 appears in Exhibit L attached to the First Amended Complaint. Except as so admitted, denied.

42. Illumina admits that the Exhibit O attached to the First Amended Complaint purports to describe aspects of the sequencing process that may be employed in the NovaSeq System. Except as so admitted, denied.

43. Paragraph 43 states a legal conclusion to which no response is required, and Illumina denies any allegations therein.

### iv. "i) binding a complementary nucleotide to a nucleotide at a detection position,"

44. Illumina admits that the Exhibit O attached to the First Amended Complaint purports to describe aspects of the sequencing process that may be employed in the NovaSeq System. Except as so admitted, denied.

45. Illumina admits the image in paragraph 45 appears in Exhibit O attached to

the First Amended Complaint. Except as so admitted, denied.

46. Illumina admits the language quoted in paragraph 46 appears in Exhibit L attached to the First Amended Complaint. Except as so admitted, denied.

47. Illumina admits the language quoted in paragraph 47 appears in Exhibit M attached to the First Amended Complaint. Except as so admitted, denied.

48. Illumina admits the image in paragraph 48 appears in Exhibit O attached to the First Amended Complaint. Except as so admitted, denied.

> **v. "ii) detecting, at the position on the surface occupied by the nucleic acid template, the presence or absence of fluorescent signal(s) associated with the complementary nucleotide; wherein . . ."**

49. Illumina admits that the language quoted in paragraph 49 appears in Exhibit M attached to the First Amended Complaint. Except as so admitted, denied.

50. Denied.

51. Illumina admits the language quoted in paragraph 51 appears in Exhibit M attached to the First Amended Complaint. Except as so admitted, denied.

> **vi. "1) detecting a first fluorescent signal and not a second fluorescent signal at the position identifies the complementary nucleotide as a nucleotide selected from A, T, G and C;"**

52. Denied.

> **vii. "2) detecting the second fluorescent signal and not the first fluorescent signal at the position identifies the complementary nucleotide as a nucleotide selected from A, T, G and C that is different from the nucleotide selected in (1);"**

53. Denied.

> **viii. "3) detecting both the first fluorescent signal and the second fluorescent signal at the position**

**identifies the complementary nucleotide as a nucleotide selected from A, T, G and C that is different from nucleotides selected in (1) and (2); and"**

54.     Denied.

**ix. "4) detecting neither the first fluorescent signal nor the second fluorescent signal at the position identifies the complementary nucleotide as a nucleotide selected from A, T, G and C that is different from the nucleotides selected in (1), (2) and (3);"**

55.     Denied.

**x. "iii) deducing the identity of the nucleotide at the detection position in the nucleic acid template based on the identity of the complementary nucleotide."**

56.     Denied.

57.     Illumina admits the language quoted in paragraph 57 appears in Exhibit N attached to the First Amended Complaint.  Except as so admitted, denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Illumina admits the images in paragraph 61 appears in Exhibit Q attached to the First Amended Complaint.  Except as so admitted, denied.

62.     Illumina admits the image in paragraph 62 appears in Exhibit N attached to the First Amended Complaint.  Except as so admitted, denied.

63.     Denied.

64.     Illumina admits the language quoted and image in paragraph 64 appears in Exhibit R attached to the First Amended Complaint.  Except as so admitted, denied.

65. Denied.

66. Illumina admits the image in paragraph 66 appears in Exhibit S attached to the First Amended Complaint. Except as so admitted, denied.

67. Illumina admits the language quoted in paragraph 67 appears in Exhibit R attached to the First Amended Complaint. Except as so admitted, denied.

68. Illumina lacks the knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 68 of the Complaint and therefore denies those allegations.

69. Illumina admits the language quoted in paragraph 69 appears in Exhibits T and L attached to the First Amended Complaint. Except as so admitted, denied.

70. Denied.

71. Illumina admits that the language quoted in paragraph 71 appears in Exhibit W attached to the First Amended Complaint. Except as so admitted, denied.

72. Denied.

73. Paragraph 73 states a legal conclusion to which no response is required, and Illumina denies any allegations therein.

**b. Infringement of Claim 2 of the '132 Patent**

74. Illumina admits Claim 2 of the '132 patent recites "The method of claim 1 wherein the nucleic acid templates comprise adaptors." Except as so admitted, denied.

75. Illumina admits the language quoted in paragraph 75 appears in Exhibit L attached to the First Amended Complaint. Except as so admitted, denied.

76. Illumina admits the table in paragraph 76 appears in Exhibit L attached to the First Amended Complaint. Except as so admitted, denied.

77.     Denied.

78.     Illumina admits the language quoted in paragraph 78 appears in Exhibit Y attached to the First Amended Complaint.  Except as so admitted, denied.

### c.  Infringement of Claim 3 of the '132 Patent

79.     Illumina admits Claim 3 of the '132 patent recites "The method of claim 2 wherein the nucleic acid templates are formed from a plurality of genomic fragments."  Except as so admitted, denied.

80.     Illumina admits the table in paragraph 80 appears in Exhibit Z attached to the First Amended Complaint.  Except as so admitted, denied.

81.     Paragraph 81 states a legal conclusion to which no response is required, and Illumina denies any allegations therein.

### d.  Infringement of Claim 4 of the '132 Patent

82.     Illumina admits Claim 4 of the '132 patent recites "The method of claim 3 wherein the genomic fragments are human genomic DNA."  Except as so admitted, denied.

83.     Denied.

84.     Illumina admits the language in paragraph 84 appears in Ex. AA attached to the First Amended Complaint.  Except as so admitted, denied.

85.     Paragraph 85 states a legal conclusion to which no response is required, and Illumina denies any allegations therein.

### B.  Indirect Infringement of the Claims 1-4 of the '132 Patent

86.     Denied.

87.     Denied.

88.     Denied.

89. Denied.

90. Denied.

91. Denied.

**RESPONSE TO COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,222,132**

92. Illumina incorporates its responses to paragraphs 1-91 as if fully set forth herein.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

**RESPONSE TO JURY DEMAND**

102. Illumina admits that the First Amended Complaint sets a demand for a trial by jury. Illumina likewise demands a trial by jury on all issues so triable.

**RESPONSE TO PRAYER FOR RELIEF**

103. Illumina denies that Complete Genomics is entitled to any relief whatsoever, including the relief stated in paragraphs A through F in the First Amended Complaint, from either Illumina or the Court, either as prayed for in the First Amended Complaint or otherwise.

## DEFENSES

104.     Illumina alleges and asserts the following defenses in response to the allegations in the First Amended Complaint.

### First Defense – Non-Infringement

105.     Illumina has not infringed and is not infringing directly, indirectly, contributorily, by inducement, or in any other manner any valid and enforceable claim of the '132 patent, either literally or by the doctrine of equivalents.

### Second Defense – Invalidity

106.     One or more claims of the '132 patent are invalid for failure to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1, et seq., including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  For example, one or more claims of the '132 patent is invalid for double patenting over at least U.S. Patent No. 9,523,125.  In addition, one or more claims of the '132 patent are invalid because the full scope of those claims is not enabled, nor described, by the written description of the '132 patent, and those claims are indefinite.

### Third Defense – Failure to State a Claim

107.     Complete Genomics may not claim or recover any relief, including the relief stated in paragraphs A through F in the First Amended Complaint, from either Illumina or the Court, because the First Amended Complaint and each and every cause of action therein fail to state a claim upon which relief may be granted or facts sufficient to support a cause of action.

## COUNTERCLAIMS

1.      Illumina and Illumina Cambridge (collectively, "Counterclaim-Plaintiffs") allege the following counterclaim against Complete Genomics, BGI Americas, and MGI Americas (collectively, "Counterclaim-Defendants").

## PARTIES

2.      Illumina is a Delaware corporation with its principal place of business at 5200 Illumina Way, San Diego, California 92122.

3.      Illumina Cambridge is a foreign corporation with its principal place of business at Chesterford Research Park, Little Chesterford, Saffron Walden, Essex CB10 1XL, United Kingdom.

4.      Illumina Cambridge, a wholly-owned subsidiary of Illumina, is the owner by assignment of all right, title and interest in and to U.S. Patent No. 9,303,290 ("'290 Patent"), U.S. Patent No. 9,217,178 ("'178 Patent"), and U.S. Patent No. 9,970,055 ("'055 Patent"). Illumina is the exclusive licensee of the '290, '178, and '055 Patents with the right to sue to enforce its exclusive rights.

5.      Counterclaim-Defendant Complete Genomics is a Delaware corporation with its principal place of business at 2904 Orchard Parkway, San Jose, California 95134. Complete Genomics is, among other things, a research and development entity supporting the accused activity and is directly and indirectly infringing with the activity set forth in this Counterclaim.

6.      Counterclaim-Defendant BGI Americas is a Delaware corporation with its principal place of business at 2904 Orchard Parkway, San Jose, California 95134. BGI Americas is, among other things, a sales and marketing arm that is involved directly and indirectly with the

infringing activity set forth in this Counterclaim.

7.     Counterclaim-Defendant MGI Americas is a Delaware corporation with its principal place of business at 2904 Orchard Parkway, San Jose, California 95134.  MGI Americas is, among other things, a sales and marketing arm that is involved directly and indirectly with the infringing activity set forth in this Counterclaim.

## JURISDICTION AND VENUE

8.     This action arises under the Patent Laws of the United States of America, 35 U.S.C. § *1 et seq.*  This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under the Patent Act.

9.     This Court has personal jurisdiction over Complete Genomics because Complete Genomics has submitted itself to this Court's jurisdiction by filing its First Amended Complaint in this Court.

10.     This Court further has personal jurisdiction over Counterclaim-Defendants. Counterclaim-Defendants have substantial contacts with the forum as a consequence of conducting business in Delaware, and have purposely availed themselves of the benefits and protections of Delaware state law by incorporating under Delaware law.

11.     Venue in this Court is conditionally proper over Complete Genomics based on choice of forum by Complete Genomics and pursuant to 28 U.S.C. §§ 1391(b), (c), and/or 1400(b).

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) as to the Counterclaim-Defendants because Counterclaim-Defendants are all incorporated in Delaware and, therefore, reside in this District and Delaware is a convenient forum for resolution of the parties' disputes set forth herein.

## BACKGROUND

13.     On April 5, 2016, the United States Patent and Trademark Office duly and legally issued the '290 Patent, entitled "Method of Nucleotide Detection." The named inventors of the '290 Patent are Milan Fedurco, Anthony Romieu, and Gerrardo Turcatti. By operation of law and as a result of written assignment agreements, Counterclaim-Plaintiffs, specifically counterclaim-plaintiff Illumina Cambridge, obtained the entire right, title, and interest to and in the '290 Patent. The '290 Patent is attached hereto. Ex. 1.

14.     On December 22, 2015, the United States Patent and Trademark Office duly and legally issued the '178 Patent, entitled "Method of Nucleotide Detection." The named inventors of the '178 Patent are Milan Fedurco, Anthony Romieu, and Gerrardo Turcatti. By operation of law and as a result of written assignment agreements, Counterclaim-Plaintiffs, specifically counterclaim-plaintiff Illumina Cambridge, obtained the entire right, title, and interest to and in the '178 Patent. The '178 Patent is attached hereto. Ex. 2.

15.     On May 15, 2018, the United States Patent and Trademark Office duly and legally issued the '055 Patent, entitled "Method of Nucleotide Detection." The named inventors of the '055 Patent are Milan Fedurco, Anthony Romieu, and Gerrardo Turcatti. By operation of law and as a result of written assignment agreements, Counterclaim-Plaintiffs, specifically counterclaim-plaintiff Illumina Cambridge, obtained the entire right, title, and interest to and in the '055 Patent. The '055 Patent is attached hereto. Ex. 3.

16.     In or around October 2015, BGI Tech. Co., Ltd. ("BGI Ltd."), the Chinese parent company of Counterclaim-Defendants, launched the BGISEQ-500, a desktop sequencing instrument. In or around November 2016, BGI Ltd. launched the BGISEQ-50, a smaller version of the BGISEQ-500. In or around October 2017, BGI Ltd. launched two genetic sequencing

instruments, the MGISEQ-200 and the MGISEQ-2000, as upgrades to the BGISEQ-50 and BGISEQ-500. In or around October 2018, MGI Tech. Co., Ltd. ("MGI Ltd."), a Chinese company that is a sister company to the Counterclaim-Defendants, announced a new model called the MGISEQ-T7. The BGISEQ and MGISEQ devices (referred to throughout this counterclaim as "BGISEQ" and "MGISEQ") are identified in MGI Ltd.'s product brochures, on the "Sequencer" section of MGI Ltd.'s website, and the product user manuals, which are all publically accessible on MGI Ltd.'s website.

17. Complete Genomics' and MGI Americas' Chief Scientific Officer, Rade Drmanac, stated that "the current sequencing chemistry relies on stepwise sequencing-by-synthesis (SBS) where 3'-blocked nucleotides are labeled with cleavable fluorescent dyes, which leave behind a molecular 'scar' after they are removed. This chemistry is similar to that used by Illumina and others." Ex. 4

18. To demonstrate how Counterclaim-Defendants infringe at least claim 1 of the '290 Patent with their MGISEQ and BGISEQ sequencers, attached is a preliminary and exemplary claim chart. Ex. 5. This chart is not intended to limit Counterclaim-Plaintiffs' right to modify this chart or any other claim chart or allege that other activities of Counterclaim-Defendants infringe the identified claims or any other claims of the '290 Patent or any other patents. This chart is hereby incorporated by reference in its entirety. Each claim element that is mapped to MGISEQ and BGISEQ products and related reagents shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

19. To demonstrate how Counterclaim-Defendants infringe at least claim 1 of the '178 Patent with their MGISEQ and BGISEQ sequencers, attached is a preliminary and

exemplary claim chart. Ex. 6. This chart is not intended to limit Counterclaim-Plaintiffs' right to modify this chart or any other claim chart or allege that other activities of Counterclaim-Defendants infringe the identified claims or any other claims of the '178 Patent or any other patents. This chart is hereby incorporated by reference in its entirety. Each claim element that is mapped to MGISEQ and BGISEQ products and related reagents shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

20. To demonstrate how Counterclaim-Defendants infringe at least claim 1 of the '055 Patent with their MGISEQ and BGISEQ sequencers, attached is a preliminary and exemplary claim chart. Ex. 7. This chart is not intended to limit Counterclaim-Plaintiffs' right to modify this chart or any other claim chart or allege that other activities of Counterclaim-Defendants infringe the identified claims or any other claims of the '055 Patent or any other patents. This chart is hereby incorporated by reference in its entirety. Each claim element that is mapped to MGISEQ and BGISEQ products and related reagents shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

21. Counterclaim-Defendants have and continue to directly infringe pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least claim 1 of the '290, '178, and '055 Patents by using the MGISEQ and BGISEQ sequencers and related reagents within the United States. Counterclaim-Defendants have used the MGISEQ and BGISEQ sequencers in the United States as part of their preparations to enter North American markets, specifically in connection with research, development, testing, and/or promotional activities related to the products. Counterclaim-Defendants also use the MGISEQ and BGISEQ products and related

reagents in the United States whenever they install these types of sequencers at a United States facility.

22. Counterclaim-Defendants are inducing infringement as prohibited by 35 U.S.C. § 271(b). The operation of Counterclaim-Defendants' MGISEQ and BGISEQ sequencers directly infringe at least claim 1 of the '290, '178, and '055 Patents. Counterclaim-Defendants actively induce infringement by promoting the infringing products, encouraging their infringing use and threatening to sell them throughout the United States. For example, Counterclaim-Defendants have recently began actively seeking to hire sales personnel, including at least a Senior Regional Sales Manager/Director and Strategic Accounts Specialist/Manger/Director, in the United States to promote and sell the infringing products domestically. As a further example, Counterclaim-Defendants distribute MGISEQ and BGISEQ promotional and marketing materials and the MGISEQ and BGISEQ User Manuals in websites directed to the United States market.

23. Counterclaim-Defendants are contributing to infringement pursuant to 35 U.S.C. § 271(c). Users of the MGISEQ and BGISEQ products directly infringe at least claim 1 of the '290, '178, and '055 Patents when they use these systems. Counterclaim-Defendants contribute to infringement by supplying in the United States products designed for use in practicing claim 1 of the '290, '178, and '055 Patents, including for example the MGISEQ and BGISEQ systems themselves, MGISEQ and BGISEQ reagent kits, and the MGISP-960 sample prep system and by threatening to sell those systems throughout the United States.

## COUNT I

**(Infringement of U.S. Patent No. 9,303,290; U.S. Patent No. 9,217,178; and U.S. Patent No. 9,970,055)**

24. Counterclaim-Plaintiffs re-allege and incorporate by this reference the allegations contained throughout this Counterclaim into each allegation of infringement and

request for remedies.

25.     Counterclaim-Defendants and users of Counterclaim-Defendants' infringing products have and continue to directly infringe, literally or by equivalence, the '290, '178, and '055 Patents by practicing one or more claims of the '290, '178, and '055 Patents by using the MGISEQ and BGISEQ products and other infringing products.  The following allegations identify the acts of direct, induced and contributory infringement by each named counterclaim-defendant as supplemented by the allegations throughout this Counterclaim.

**Complete Genomics' Infringement of the '290, '178, and '055 Patents**

### Direct Infringement by Complete Genomics

26.     Complete Genomics has and is directly infringing the '290, '178, and '055 Patents pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the MGISEQ and BGISEQ within the United States, among other infringing acts.  Complete Genomics has installed MGISEQ and BGISEQ systems at Complete Genomics locations in the United States. Complete Genomics has used the MGISEQ and BGISEQ in the United States.

### Induced Infringement by Complete Genomics

27.     Complete Genomics is liable for its induced infringement of the '290, '178, and '055 Patents pursuant to 35 U.S.C. § 271(b).  Specifically, Complete Genomics has and is actively, knowingly, and intentionally inducing infringement of the '290, '178, and '055 Patents through a range of activities related to the MGISEQ and BGISEQ, among other infringing acts. Complete Genomics is responsible for substantial marketing of BGI products, including the MGISEQ and BGISEQ, and is threatening to encourage and support the sale of those products in the United States.

28.     Complete Genomics has induced infringement by controlling the design,

manufacture, and supply of materials or apparatuses to be used with the MGISEQ and BGISEQ Systems, including for example the MGISP-960, with the knowledge and specific intent that users will use these products to infringe by performing the patented methods of the '290, '178, and '055 Patents.

29.     Complete Genomics has induced infringement by controlling the design, manufacture, and supply of various MGISEQ and BGISEQ reagent kits (which use specialized labeled nucleotides and buffers), with the knowledge and specific intent that users will use these products to infringe by performing the patented methods of the '290, '178, and '055 Patents.

30.     Complete Genomics has induced infringement by disseminating promotional and marketing materials relating to the MGISEQ and BGISEQ with the knowledge and specific intent that users will use the MGISEQ and BGISEQ to infringe by performing the patented methods of the '290, '178, and '055 Patents.

31.     Complete Genomics has induced infringement by creating distribution channels for the aforementioned MGISEQ and BGISEQ, materials and apparatuses for use with the MGISEQ and BGISEQ Systems, and the associated reagent kits, with the knowledge and specific intent that users will use these products to infringe by performing the patented methods of the '290, '178, and '055 Patents.

32.     Complete Genomics has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing use of their MGISEQ and BGISEQ products.  These materials direct users to use the MGISEQ and BGISEQ and related products in an infringing manner.  For example, the MGISEQ and BGISEQ reagent kit manuals state that the kits are for preparation of DNA sequencing using the MGISEQ

and BGISEQ, which are sold with preprogrammed software protocols that control operation of the MGISEQ and BGISEQ so that each use of the MGISEQ and BGISEQ infringes. By providing reagent kits and directing users to purchase these reagent kits for use on the MGISEQ and BGISEQ, Complete Genomics induces infringement.

33. Complete Genomics acted with knowledge that the induced acts constitute infringement. Complete Genomics acted with knowledge of or willful blindness with regards to users' underlying infringement.

<u>Contributory Infringement by Complete Genomics</u>

34. Complete Genomics is liable for contributory infringement of the '290 Patent and '178 Patent pursuant to 35 U.S.C. § 271(c). Specifically, Complete Genomics has and is contributing to infringement of the '290 Patent by, without authority, supplying within the United States, materials and apparatuses for practicing the claimed method of the '290 Patent and '178 Patent, including at least the MGISEQ and BGISEQ, the MGISP-960, and the associated reagent kits (which use specialized labeled nucleotides and buffers). These products constitute a material part of the claimed method of the '290, '178, and '055 Patents.

35. Complete Genomics knows that the MGISEQ and BGISEQ, materials and apparatuses designed for use with the MGISEQ and BGISEQ, and the MGISEQ and BGISEQ reagent kits, constitute material parts of the inventions of the '290, '178, and '055 Patents and that they are not a staple article or commodity of commerce suitable for substantial non-infringing use. As documented above, the MGISEQ and BGISEQ are specialized sequencing instruments that carry out a specific method for sequencing DNA using specific labeled nucleotides with ascorbic acid buffer or a salt thereof. As such, neither the MGISEQ and BGISEQ, the materials or apparatuses specifically designed for use with the MGISEQ and BGISEQ, nor the MGISEQ and

BGISEQ reagent kits are a staple article of commerce suitable for substantial non-infringing use. Complete Genomics knows that the MGISEQ and BGISEQ, the materials or apparatuses specifically designed for use with the MGISEQ and BGISEQ, and the MGISEQ and BGISEQ reagents kits are not staple articles or commodities of commerce suitable for substantial non-infringing use because these products have no use apart from infringing the '290, '178, and '055 Patents. Complete Genomics knows that the use of its products infringe the '290, '178, and '055 Patents and supplies them anyway.

<u>Willful Infringement By Complete Genomics</u>

36. As set forth throughout this Counterclaim, Complete Genomics has acted willfully and egregiously in performing the acts of infringement and threatening to perform the acts of infringement identified in this Counterclaim. Complete Genomics' infringement of the '290 Patent has been and is deliberate and willful and constitutes egregious misconduct. In performing the acts of infringement and threatening to perform the acts of infringement identified in this Counterclaim, Complete Genomics has been willfully blind to its ongoing infringement.

37. Complete Genomics' infringement of the '290, '178, and '055 Patents has injured Counterclaim-Plaintiffs in their business and property rights. Counterclaim-Plaintiffs are entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial. Counterclaim-Plaintiffs deserve treble damages and the reimbursement of its fees and costs as set forth in 35 U.S.C. §§ 284 and 285.

38. Complete Genomics' infringement of the '290, '178, and '055 Patents has caused irreparable harm to Counterclaim-Plaintiffs and will continue to cause such harm unless and until its infringing activities are enjoined by this Court.

**BGI Americas' Infringement of the '290 Patent**

Direct Infringement By BGI Americas

39.     BGI Americas has and is directly infringing the '290, '178, and '055 Patents pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the MGISEQ and BGISEQ within the United States, among other infringing acts.  Specifically, BGI Americas has used the MGISEQ and BGISEQ in the United States.

Induced Infringement By BGI Americas

40.     BGI Americas is liable for their induced infringement of the '290, '178, and '055 Patents pursuant to 35 U.S.C. § 271(b).  Specifically, BGI Americas has and is actively, knowingly, and intentionally inducing infringement of the '290, '178, and '055 Patents through a range of activities related to the MGISEQ and BGISEQ, among other things.

41.     BGI Americas is inducing infringement by promoting the use of the MGISEQ and BGISEQ with the knowledge and specific intent that users will use the MGISEQ and BGISEQ to infringe by performing the patented methods of the '290, '178, and '055 Patents. BGI Americas is responsible for substantial marketing of BGI products, including the MGISEQ and BGISEQ, and is threatening to encourage and support the sale of those products in the United States.

42.     BGI Americas is inducing infringement by disseminating promotional and marketing materials relating to the BGISEQ and MGISEQ with the knowledge and specific intent that users will use the BGISEQ and MGISEQ to infringe by performing the patented methods of the '290 Patent and '178 Patent.

43.     BGI Americas is inducing infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the

knowledge and the specific intent to encourage and facilitate the infringing use of their BGISEQ and MGISEQ products. These materials direct users to use the BGISEQ and MGISEQ and related products in an infringing manner. By providing reagent kits for use on the BGISEQ and MGISEQ, BGI Americas induces infringement.

44.     BGI Americas acted with knowledge that the induced acts constitute infringement. BGI Americas acted with knowledge of or willful blindness with regards to users' underlying infringement.

<u>Contributory Infringement By BGI Americas</u>

45.     BGI Americas is liable for contributory infringement of the '290, '178, and '055 Patents pursuant to 35 U.S.C. § 271(c). Specifically, BGI Americas contributes to the infringement of the '290, '178, and '055 Patents by, without authority, supplying within the United States materials and apparatuses for practicing the claimed method of the '290, '178, and '055 Patents, including at least the BGISEQ and MGISEQ, the MGISP-960, and the associated reagent kits (which use specialized labeled nucleotides and buffers). These products constitute a material part of the claimed method of the '290, '178, and '055 Patents.

46.     BGI Americas knows that the BGISEQ and MGISEQ, materials and apparatuses designed for use with the BGISEQ and MGISEQ, and the BGISEQ and MGISEQ reagent kits, constitute material parts of the inventions of the '290, '178, and '055 Patents and that they are not a staple article or commodity of commerce suitable for substantial non-infringing use. As documented above, the BGISEQ and MGISEQ are specialized sequencing instruments that carry out a specific method for sequencing DNA using specific labeled nucleotides with ascorbic acid buffer or a salt thereof. As such, neither the BGISEQ and MGISEQ, the materials or apparatuses specifically designed for use with the BGISEQ and MGISEQ, nor the BGISEQ and

MGISEQ reagent kits are a staple article of commerce suitable for substantial noninfringing use. BGI Americas knows that the BGISEQ and MGISEQ, the materials or apparatuses specifically designed for use with the BGISEQ and MGISEQ, and the BGISEQ and MGISEQ reagents kits are not staple articles or commodities of commerce suitable for substantial noninfringing use because these products have no use apart from infringing the '290, '178, and '055 Patents. BGI Americas knows that the use of its products infringe the '290, '178, and '055 Patents and supplies them anyway.

<u>Willful Infringement By BGI Americas</u>

47.　As set forth throughout this Counterclaim, BGI Americas has acted willfully and egregiously in performing the acts of infringement and threatening to perform the acts of infringement identified in this Counterclaim. BGI Americas' infringement of the '290, '178, and '055 Patents has been and is deliberate and willful and constitutes egregious misconduct. In performing the acts of infringement and threatening to perform the acts of infringement identified in this Counterclaim, BGI Americas has been willfully blind to its ongoing infringement.

48.　BGI Americas' infringement of the '290, '178, and '055 Patents has injured Counterclaim-Plaintiffs in their business and property rights. Counterclaim-Plaintiffs are entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial. Counterclaim-Plaintiffs deserve treble damages and the reimbursement of its fees and costs as set forth in 35 U.S.C. §§ 284 and 285.

49.　BGI Americas' infringement of the '290, '178, and '055 Patents has caused irreparable harm to Counterclaim-Plaintiffs and will continue to cause such harm unless and until its infringing activities are enjoined by this Court.

## **MGI Americas' Infringement of the '290, '178, and '055 Patents**

### Direct Infringement By MGI Americas

50.     MGI Americas has and is directly infringing the '290, '178, and '055 Patents pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by using the MGISEQ and BGISEQ within the United States.  Specifically, because MGI Americas claims to be the "leading manufacturer and developer of BGI's proprietary NGS instrumentation," MGI Americas has used the MGISEQ and BGISEQ in the United States.

### Induced Infringement By MGI Americas

51.     MGI Americas is liable for their induced infringement of the '290, '178, and '055 Patents pursuant to 35 U.S.C. § 271(b).  Specifically, MGI Americas has and is actively, knowingly, and intentionally inducing infringement of the '290, '178, and '055 Patents through a range of activities related to the MGISEQ and BGISEQ, among other infringing acts.  MGI Americas is responsible for substantial marketing of BGI products, including the MGISEQ and BGISEQ, and is threatening to encourage and support the sale of those products in the United States.

52.     MGI Americas has induced infringement by controlling, with the other Defendants, the design, manufacture and supply of the MGISEQ and BGISEQ with the knowledge and specific intent that users will use the MGISEQ and BGISEQ to infringe by performing the patented methods of the '290, '178, and '055 Patents.  MGI Americas distributes, *inter alia*, the MGISEQ and BGISEQ User Manual(s), the various reagent kit manuals, technical handbooks, product detail sheets, and technical specification sheets.  These materials direct users to use the MGISEQ and BGISEQ and MGISEQ and BGISEQ reagent kits in an infringing manner.  By providing reagent kits and directing users to purchase these reagent kits for use on the MGISEQ

and MGISEQ, BGI Americas induces infringement.

53. MGI Americas has induced infringement by distributing materials or apparatuses to be used with the MGISEQ and BGISEQ Systems, including for example the MGISP-960, with the knowledge and specific intent that users will use these products to infringe by performing the patented methods of the '290, '178, and '055 Patents.

54. MGI Americas has induced infringement by distributing MGISEQ and BGISEQ reagent kits (which use specialized labeled nucleotides and buffers) with the knowledge and specific intent that users will use these products to infringe by performing the patented methods of the '290, '178, and '055 Patents.

55. MGI Americas has induced infringement by users of its products by disseminating promotional and marketing materials relating to the MGISEQ and BGISEQ with the knowledge and specific intent that users will use the MGISEQ or BGISEQ to infringe by performing the patented methods of the '290, '178, and '055 Patents.

56. MGI Americas has induced infringement by distributing other instructional materials, product manuals, technical materials, and bioinformatics software platforms with the knowledge and the specific intent to encourage and facilitate the infringing use of their MGISEQ and BGISEQ products. For example, MGI Americas is responsible for the MGISEQ and BGISEQ User Manuals, the various reagent kit manuals, technical handbooks, product detail sheets, and technical specification sheets. These materials direct users to use the MGISEQ and BGISEQ and related products in an infringing manner. For example, the MGISEQ and BGISEQ reagent kit handbooks state that the kits are for preparation of DNA sequencing using the MGISEQ and BGISEQ, which are sold with pre-programmed software protocols that control operation of the MGISEQ and BGISEQ so that each use of the MGISEQ and BGISEQ infringes. By providing

reagent kits and directing users to purchase these reagent kits for use on the MGISEQ and BGISEQ, MGI Americas induces infringement.

57.     MGI Americas acted with knowledge that the induced acts constitute infringement.  MGI Americas acted with knowledge of or willful blindness with regards to users' underlying infringement.

<u>Contributory Infringement By MGI Americas</u>

58.     MGI Americas is liable for contributory infringement of the '290, '178, and '055 Patents pursuant to 35 U.S.C. § 271(c).  Specifically, MGI Americas has and is contributing to the infringement of the '290, '178, and '055 Patents by, without authority, distributing within the United States, materials and apparatuses for practicing the claimed method of the '290, '178, and '055 Patents, including at least the MGISEQ and BGISEQ, the MGISP-960, and the associated reagent kits (which use specialized labeled nucleotides and buffers).  These products constitute a material part of the claimed method of the '290, '178, and '055 Patents.

59.     MGI Americas knows that the MGISEQ and BGISEQ, materials and apparatuses designed for use with the MGISEQ and BGISEQ, and the associated reagent kits, constitute material parts of the inventions of the '290, '178, and '055 Patents and that they are not a staple article or commodity of commerce suitable for substantial non-infringing use.  As documented above, the MGISEQ and BGISEQ are specialized sequencing instruments that carry out a specific method for sequencing DNA using specific labeled nucleotides with ascorbic acid buffer or a salt thereof.  As such, neither the MGISEQ and BGISEQ, the materials or apparatuses specifically designed for use with the MGISEQ and BGISEQ, nor the MGISEQ and BGISEQ reagent kits are a staple article of commerce suitable for substantial non-infringing use.  MGI Americas knows that the MGISEQ and BGISEQ, the materials or apparatuses specifically

designed for use with the MGISEQ and BGISEQ, and the MGISEQ and BGISEQ reagents kits are not staple articles or commodities of commerce suitable for substantial non-infringing use because these products have no use apart from infringing the '290, '178, and '055 Patents. MGI Americas knows that the use of its products infringe the '290, '178, and '055 Patents and supplies them anyway.

<u>Willful Infringement By MGI Americas</u>

60.     As set forth throughout this Counterclaim, MGI Americas has acted willfully and egregiously in performing the acts of infringement and threatening to perform the acts of infringement identified in this Counterclaim. MGI Americas' infringement of the '290, '178, and '055 Patents has been and is deliberate and willful and constitutes egregious misconduct. In performing the acts of infringement and threatening to perform the acts of infringement identified in this Counterclaim, MGI Americas has been willfully blind to its ongoing infringement.

61.     MGI Americas' infringement of the '290, '178, and '055 Patents has injured Illumina in its business and property rights. Illumina is entitled to recovery of monetary damages for such injuries pursuant to 35 U.S.C. § 284 in an amount to be determined at trial. Illumina deserves treble damages and the reimbursement of its fees and costs as set forth in 35 U.S.C. §§ 284 and 285.

62.     MGI Americas' infringement of the '290, '178, and '055 Patents has caused irreparable harm to Counterclaim-Plaintiffs and will continue to cause such harm unless and until its infringing activities are enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiffs pray for relief as follows:

A.      Judgment that Counterclaim-Defendants have infringed one or more claims of the '290, '178, and '055 Patents;

B.      An order preliminarily and permanently enjoining Counterclaim-Defendants, and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from further infringement of the '290, '178, and '055 Patents;

C.      An award of damages pursuant to 35 U.S.C. § 284;

D.      A declaration that Counterclaim-Defendants' infringement of the '290, '178, and '055 Patents has been willful and deliberate, and an increase to the award of damages of three times the amount found or assessed by the Court, in accordance with 35 U.S.C. § 284;

E.      An order for an accounting of damages from Counterclaim-Defendants' infringement;

F.      An award to Counterclaim-Plaintiffs of their costs and reasonable expenses to the fullest extent permitted by law;

G.      A declaration that this case is exceptional pursuant to 35 U.S.C. § 285, and an award of attorneys' fees and costs; and

H.      An award of such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Counterclaim-Plaintiffs hereby demand a trial by jury on all issues so triable.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

*Of Counsel:*

_____

Edward R. Reines

Derek Walter

WEIL, GOTSHAL & MANGES, LLP

201 Redwood Shores Parkway

Redwood Shores, CA  94065

(650) 802-3000

Steven J. Balick (#2114)

Andrew C. Mayo (#5207)

500 Delaware Avenue, 8th Floor

P.O. Box 1150

Wilmington, DE  19899

(302) 654-1888

sbalick@ashbygeddes.com

amayo@ashbygeddes.com

Dated:  July 25, 2019

*Attorneys for Illumina, Inc. and*
*Illumina Cambridge Ltd.*